IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRAMAINE FRANCIS-LUSTER, ET AL., | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CASE NO. 3:19-CV-2708-L-BK |
| | § | |
| KELLEY LAW FIRM, P.C., | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the United States district judge's *Standing Order of Reference*, Doc. 19, this case has been referred to the undersigned United States magistrate judge for pretrial management. Now before the Court is *Plaintiffs' Motion to Certify as a Collective and Authorizing § 216(b) Notice to Potential Plaintiffs, or, in the Alternative, Expedited Discovery*. Doc. 15. For the reasons that follow, it is recommended that Plaintiffs' motion be **GRANTED** to the extent set forth herein

## I.    BACKGROUND

This case arises from the employment relationship between Defendant Kelley Law Firm, P.C., and its employees. Defendant "is a boutique civil litigation firm that represents clients in personal injury matters." Doc. 15 at 1; Doc. 17 at 9. Two of Defendants' former paralegals, Plaintiffs Tramaine Francis-Luster and Terena Hodge, brought this suit under the Fair Labor Standards Act ("FLSA") to recover unpaid overtime wages from Defendant. Doc. 1 at 1. An additional former paralegal, Plaintiff LaDrina Jones, has since joined the suit. Doc. 14 at 1. While employed by Defendant, Plaintiffs were salaried employees. Doc. 15 at 2; Doc. 17 at 9.

Plaintiffs allege "Defendant failed to pay [its] paralegals for the hours worked over forty in a workweek." Doc. 15 at 3.

In their motion *sub judice*, Plaintiffs request that the Court certify and send notice of a collective action because potential opt-in plaintiffs exist who performed similar work duties and were subjected to the same allegedly illegal pay provisions as Plaintiffs. Doc. 15 at 6-7. Plaintiffs define the potential opt-in plaintiffs as: "All persons employed as a paralegal by Kelley Law Firm in its Dallas, Texas, office from August 2017 to the present." Doc. 15 at 9.

## II.   APPLICABLE LAW

The FLSA requires covered employers to pay nonexempt employees for hours worked over 40 in a week, at the overtime rate of "not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). FLSA section 216(b) provides employees a cause of action against employers who violate section 207. 29 U.S.C. § 216(b). Under section 216(b), employees may sue via a collective action, which requires an affirmative, individual consent in writing from each employee who wishes to join. 29 U.S.C. § 216(b). This makes FLSA collectives different than typical class actions—"29 U.S.C. § 216(b) does not truly authorize a class action: it is properly viewed as a rule of joinder under which only the individual opt-in plaintiffs have legal status, not the aggregate class of aggrieved employees." *Greinstein v. Fieldcore Servs. Sols., LLC*, No. 2:18-CV-208-Z, 2020 WL 6821005, at *4 (N.D. Tex. Nov. 20, 2020) (quotation omitted).

Employees may only proceed as a collective when they are "similarly situated" to one another. 29 U.S.C. § 216(b). Courts are tasked with deciding who is "similarly situated" such that they may join the collective—neither section 216(b) nor any Fifth Circuit precedent offers a clear-cut method of determining this, however. *Eltayeb v. Deli Mgmt., Inc.*, No. 4:20-CV-00385,

2021 WL 5907781, at *1 (E.D. Tex. Dec. 14, 2021). Prior to 2021, courts typically applied the *Lusardi* two-step approach to decide whether to "certify" section 216(b) collective actions. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987); *see Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021) (rejecting *Lusardi*). *Lusardi* calls for a more lenient approach in its first step, which merely requires that litigants provide a basic factual showing of similarity before they may proceed as a collective. *Swales*, 985 F.3d at 436. The second step, effectively deciding whether to decertify the collective, necessitates a more careful look at the members' similarity. *Id.* at 437.

Following the *Swales* decision, courts must abandon the two-step approach and "identify, at the outset of the case, what facts and legal conclusions will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 441. Texas federal district courts have interpreted *Swales* as a call to execute the more stringent, second *Lusardi* step from the outset.[1]

Courts have "broad, litigation-management discretion" in determining whether putative collective-action members are similarly situated, *Swales*, 985 F.3d at 442, but should consider: (1) the putative members' disparate factual and employment settings; (2) defenses available to the defendant that may be individual to each potential member; and (3) considerations of fairness and procedure, *Segovia*, 2021 WL 2187956, at *7. "[N]o one-size-fits-all solution exists." *Kibodeaux*, 2022 WL 92856, at *4. Moreover, before deciding whether notifying a collective is

---

[1] *See Torres v. Chambers Protective Servs., Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *3 n.3 (N.D. Tex. Aug. 5, 2021) (Hendrix, J.) (citing *Segovia v. Fuelco Energy L.L.C.*, No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021); *Hernandez v. Pritchard Indus. (Sw.), LLC*, No. SA-20-CV-00508-XR, 2021 WL 1146005, at *2 (W.D. Tex. Mar. 25, 2021); *Alvarez v. NES Global LLC*, No. 4:20-CV-1993, 2021 WL 3571223, at *2 (S.D. Tex. Aug. 12, 2021) (maintaining application of the second *Lusardi* step post-*Swales*); *Kibodeaux v. A&D Interests, Inc.*, No. 3:20-cv-00008, 2022 WL 92856, at *6 (S.D. Tex. Jan. 10, 2022) (same).

3

warranted, courts may opt for further discovery or may limit the collective to only include certain members; contrarily, courts may find notice justified "when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations." *Swales*, 985 F.3d at 441. Overall, courts should ask whether the case's merits can be answered collectively, thereby avoiding any future need for "highly individualized [inquiries] into each potential opt-in's circumstances" that would quickly devolve a collective action into a "cacophony of individual actions." *Id.* at 442. Notice may be sent to those putative members who meet these criteria for similarity. *Id.* at 443.

### III. ANALYSIS

**1. The Court should authorize the collective.**

*a. The members' employment experiences are similar.*

Defendant argues that there is no evidence of other similarly situated employees who would opt-in to the lawsuit, cutting against Plaintiffs' desire to proceed as a collective. Doc. 17 at 18. Also, the parties disagree as to whether putative members possess similar work settings—Defendant points out differences in their supervision and salaries, as well as a lack of a common policy. Doc. 17 at 6-8; Doc. 18 at 4. The Court analyzes both issues in turn.

    **i.    Evidence of Other Similarly Situated Employees**

Conclusory allegations that other employees exist who were also subjected to the allegedly violative employment practices "are insufficient under the [*Lusardi*] standard and the new *Swales* standard." *Lopez-Gonzales v. Ramos*, No. 2:20-CV-061-Z, 2021 WL 3192171, at *5 (N.D. Tex. July 28, 2021) (Kacsmaryk, J.). However, here, Plaintiffs have provided the Court with sufficient evidence, including an email sent to numerous individuals and paralegals at the firm directing them to work from 8:30 am to 7:30 pm. Doc. 16 at 15. Each named Plaintiff also

4

provided a declaration describing Defendant's alleged failure to pay its paralegals overtime wages and providing their personal knowledge of similarly situated paralegals. Doc. 16 at 3-13; *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 289 (N.D. Tex. 2012) ("Declarations such as these are ideal for analysis of whether the putative class members were together the victims of a single decision, policy, or plan." (quotation omitted)); *Lopez-Gonzales*, 2021 WL 3192171, at *5-7 (finding plaintiffs' declarations, which stated personal knowledge of other employees at their location who were also subjected to violative work policies, warranted sending notice to those individuals). Plaintiffs' declarations suggest that "Defendant may have implemented the same policy with respect to different employees, and that additional plaintiffs may wish to join the collective action suit." *Jones*, 281 F.R.D. at 289-90 (citation omitted). Plaintiffs are not required to identify potential opt-in plaintiffs by name in order to proceed with their suit as a collective action. *Id.* at 290 (certifying based on the named plaintiffs' affidavits). Further, since this suit's inception, one additional Plaintiff has already joined the action. Doc. 14 at 1.

  **ii.**   **Employment Settings**

To determine whether putative collective members possess similar work settings, courts must evaluate "the potential opt-in plaintiffs' job duties, geographic location, supervision, and salary to determine if the potential opt-ins are similarly situated." *Torres*, 2021 WL 3419705, at *5 (quoting *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018)). "The presence of a common policy, plan, or practice affecting all putative class members, *although not required*, can be helpful in assessing" the first factor of *Lusardi*'s second step. *Id.* (quoting *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 721 (S.D. Tex. 2014)) (emphasis added). Even when potential members' work settings differ, however, the first factor will not weigh against a finding of sufficient similarity unless liability *turns on* those differences.

*Id.* (citing *Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674, 688 (W.D. Tex. 2014), *aff'd*, 656 F. App'x 688 (5th Cir. 2016) ("These are legitimate differences, but [the employer] does not explain why they are material and preclude collective resolution of this case. FLSA liability does not turn on the geographic location of a workplace or on the identity of a direct supervisor."). When plaintiffs' claims are based on their employer's allegedly unlawful policy, the differences that are unrelated to the policy "will not provide a basis for a court to find that the first factor weighs against a similarly situated finding." *Id.* (citation omitted).

As to their job duties and geographic locations, the putative plaintiffs are plainly similar in that they work or worked at Defendant's Dallas office, Doc. 15 at 9, and Defendant concedes their primary job duties are largely the same, namely "the provision of litigation support to [Defendant's] attorneys," Doc. 17 at 9. *See Black v. Settlepou*, 2011 WL 609884, at *4 (N.D. Tex. Feb. 14, 2011) (finding paralegals who worked in different divisions similarly situated because they performed the same primary duties). That potential plaintiffs may have worked with different supervisors is not material to their FLSA overtime claim—such "differences do not diminish the evidence of a common unlawful policy applied by the employer," as here. *Allen v. City of Chicago*, No. 10 C 3183, 2014 WL 5461856, at *6-7 (N.D. Ill. Oct. 22, 2014).

Defendant also emphasizes that named Plaintiffs earned disparate hourly wages—from $22 to $29 per hour over the course of their employment. Doc. 17 at 9. However, variations in salaries are again immaterial to the FLSA claim at issue. *Powell v. One Source EHS, L.L.C.*, No. 20-161-SDD-RLB, 2021 WL 4227064, at *4 (M.D. La. Sept. 16, 2021) ("any factual differences such as 'base' compensation, . . . are irrelevant" to the similarly situated consideration); *Davis v. Mostyn Law Firm PC*, No. 4:11-cv-02874, 2012 WL 163941, at *8 (S.D. Tex. Jan. 19, 2012) (citing *Maynor v. Dow Chem. Co.*, No. G-07-0504, 2008 WL 2220394, at *8 (S.D. Tex. May 28,

6

2008) ("[T]he fact that individualized determinations for damages may have to be made should not preclude the issuance of notice.")).  F

Further, Defendant has not proffered a legal basis for its assertion that Plaintiffs' claims for unpaid overtime hours do not involve a common policy but instead is "the type of claim that requires a highly fact-specific individualized analysis."  Doc. 17 at 15.  As demonstrated *supra*, the Court finds otherwise under the facts and circumstances presented here.  *See Torres*, 2021 WL 3419705, *6 (finding differences among employees regarding work locations, job duties, and hourly wages were "separate from the alleged unlawful practice—failure to pay overtime wages," and suggesting that withholding overtime pay is a *policy* in and of itself).

Finally, the reasons for Plaintiffs' terminations or resignations, although "differing and unique," have no bearing on whether Defendant unlawfully withheld overtime pay from them.  *Id.* (where a plaintiff's claims are based on an employer's allegedly unlawful policy, noted differences between putative collective-action members that do not relate to the policy will not provide a basis for a court to find that the first factor weighs against a similarly situated finding.").

As illustrated here, the differences among Plaintiffs' circumstances Defendant highlights do not diminish Plaintiffs' claim that Defendant had a general practice of withholding overtime pay from its paralegals and that potential opt-in members are similarly situated.  Thus, the first *Lusardi* factor weighs in favor of "certification."

### b.  *Any defenses available to Defendant are not individual to any potential plaintiff.*

Defendant argues against granting the motion *sub judice* because its hours policy will lead to overly complicated, individualized hours calculations.  Doc. 17 at 9, 11.  Plaintiffs counter that differences in the hours worked per individual collective member do not cut against

the second *Lusardi* second-step factor. Doc. 18 at 5. This factor weighs against finding sufficient similarity when defenses are individualized and would thus prevent an efficient collective action. *Reyes v. Texas EZpawn, L.P.*, No. V-03-128, 2007 WL 101808, at *5 (S.D. Tex. Jan. 8, 2007).

That putative collective-action members worked different numbers of hours would hardly "result in the type of 'highly individualized inquiry' *Swales* warns against." *Eltayeb*, 2021 WL 5907781, at *3 (finding a pay structure too complex, thus weighing against certification, because it required a multi-factor equation computing each employees' miles driven and deliveries completed). There are not "several different variables" at play here to make the collective plaintiffs' wage calculation overly individualized—rather, the Court need only determine how many hours each individual plaintiff worked above 40 in a week. *See id.*; *Torres*, 2021 WL 3419705, at *6 (finding the plaintiffs were similarly situated for overtime pay claims when the defendant provided "no evidence that it applied different pay or overtime-pay policies to any subsection of the potential opt-in plaintiffs"). Although the paralegals may have worked different hours, Defendant allegedly applied only one "policy"—withholding overtime pay. *Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 935 (S.D. Tex. 2009) ("The need for individual plaintiffs to establish the amount of uncompensated time does not defeat certification."). The hours-per-plaintiff inquiry is, like the rate of pay, a damages concern that should not impede certification. *Maynor*, 2008 WL 2220394, at *8

   c. ***Fairness and procedural considerations favor certification.***

The FLSA "has been construed liberally to apply to the furthest reaches consistent with congressional direction"—it should be read broadly in favor of coverage. *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). To evaluate fairness and procedural

8

considerations, the third factor in *Lusardi*'s second step, "courts consider the primary objectives of FLSA collective actions—'(1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity.'" *Segovia*, 2021 WL 2187956, at *11 (quoting *Snively*, 314 F. Supp. 3d at 743). Courts also consider whether the case can be coherently managed in a manner that will not prejudice any party. *Id.*

In this case, allowing the putative plaintiffs to sue collectively would lower their costs and allow the Court to efficiently resolve common issues of law and fact that pertain to the proposed collective of paralegals in one proceeding instead of in multiple individual proceedings. *Id.* Further, Defendant has not demonstrated that it will be prejudiced or otherwise particularly burdened by being made to litigate against a collective. This factor weighs in favor of finding the proposed collective-action members similarly situated.

Because (1) Plaintiffs have demonstrated sufficient similarity, (2) no individualized defenses are at play, and (3) fairness and procedural considerations favor collective action, the Court should certify the FLSA collective proposed here. *See Segovia*, 2021 WL 2187956, at *11

**2. Determining the proper method and content of notice.**

Plaintiffs have requested court-facilitated notice via electronic and first-class U.S. Mail to other potential plaintiffs and have provided the court with a proposed Notice. Doc. 15 at 8; Doc. 16 at 22. Defendant argues against allowing electronic notice in favor of notice by mail and avers the proposed Notice impermissibly leaves out "a statement of KLF's denial of Plaintiffs' claims"; "does not inform the potential opt-ins that they are not required to hire Plaintiffs' attorneys"; "does not inform [them] of the obligations they would be bound by"; and has

misleading entitlement language.  Doc. 17 at 21.  Defendant requests a separate opportunity to object to Plaintiffs' Notice.  Doc. 17 at 21.

Notice is particularly important in FLSA collective actions because potential plaintiffs' statutes of limitations continue to run unless and until a plaintiff "gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  After the court determines whether plaintiffs are sufficiently similarly situated, "federal judges have the power to authorize the sending of notice to potential FLSA class members to inform them of the action and to give them opportunity to participate by opting in."  *Lopez-Gonzales*, 2021 WL 3192171, at *8 (citing *Tillis v. Glob. Fixture Servs.*, No. 4:19-CV-01059, 2020 WL 1443490, at *6 (S.D. Tex. Mar. 23, 2020)).  Courts have wide discretion in deciding the notice's content and mode of distribution.  *Id.* (citing *Tillis*, 2020 WL 1443490, at *6).  However, courts should be wary of allowing their role in the notice process to devolve into the solicitation of claims.  *Swales*, 985 F.3d at 435.  Because the Court recommends allowing Plaintiffs' claim to proceed as a collective action, Defendant should be given the opportunity to file objections and a proposed notice of its own.  *Roberts v. S.B. S. Welding, L.L.C.*, 140 F. Supp. 3d 601, 610-11 (N.D. Tex. 2015).

IV.     **CONCLUSION**

For the reasons stated above, *Plaintiffs' Motion to Certify as a Collective and Authorizing § 216(b) Notice to Potential Plaintiffs, or, in the Alternative, Expedited Discovery*, Doc. 15, should be **GRANTED** to the extent set forth above.  No later than 14 days from the district

judge's acceptance of this Recommendation, Defendant should file with the Court its objections to Plaintiffs' proposed Notice and a proposal of its own.

**SO RECOMMENDED** on February 10, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).